THEODORE H. BENEDICT et al., as Executors, etc., Respondents, *v.* WILLIAM H. WEBB, Appellant.

W. died, leaving his widow and four children him surviving, two of whom were minors. By his will he gave his residuary estate to his executors in trust, the net income to be paid to his widow and children in certain proportions, until all of his "said children, or the youngest survivor of them, shall have attained the age of twenty-one years." The principal then to be divided, one-third thereof to be set apart for, and the net income thereof paid to the widow during life, the remainder to be divided amongst his children, the shares of two of them to be paid over to them, the other two shares to be held in trust, and the income to be paid to the beneficiaries during their lives respectively; one of these was a minor. *Held,* the true construction of the will was that the division was to take place only after both the minor children should reach their majority; the suspension, therefore, would be for two minorities, the equivalent for two lives; as to the two shares which then vested absolutely the trust was lawfully limited, so also as to the share to be held in trust for the minor, although there was a further suspension during her life, because the period of her minority and the added period of her life constituted in the whole but a single life; but as to the fourth share, there was, within the statute, a suspension for three lives; and so, it was unlawful and the trust void, and as to that portion of the estate, the testator died intestate; also that, as to set aside the trust in favor of the beneficiary of this share, while sustaining that in favor of the other three children, would seriously interfere with the intention of the testator that the children and their issue should share equally, no portion of the trust attempted to be created should be sustained.

By the will, power was vested in the executors to sell the residuary real estate "if they should deem it expedient for the purpose of making such division * * * or for carrying into effect all or any other of the purposes and trusts." *Held,* that this power, at least so far as it was vested for the purpose of making the distribution, was dependent upon the validity of the trust and fell with it; and therefore, that an action was not maintainable on the part of the executors, to enforce the specific

performance of a contract made with them for the purchase of a portion of said real estate, the sale of which was made by them for the purpose of division and distribution.

(Argued January 29, 1885 ; decided March 17, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 11, 1884, which directed judgment in favor of plaintiffs upon a case submitted.

The question submitted was as to whether defendant should be compelled to perform a contract for the purchase by him, from plaintiffs, as executors of the will of James Benedict, deceased, of certain real estate, of which their testator died, seized.

The facts submitted so far as material appear in the opinion.

*George S. Hamlin* for appellant. The will created a trust estate in the executors, and not a power in trust. This is true in the first instance, and also as to the shares of the mother and daughters after the division. (*Legett* v. *Perkins,* 22 N. Y. 297 ; 1 R. S. 728, 729, §§ 55, 60 ; *Brewster* v. *Striker,* 2 N. Y. 36 ; *Vernon* v. *Vernon,* 53 id. 359 ; *Morse* v. *Morse,* 85 id. 69.) There was no gift to the children, either express or implied, until all or the youngest survivor attain the age of twenty-one. (*Smith* v. *Edwards,* 88 N. Y. 103 ; *Hobson* v. *Hale,* 95 id. 613 ; *Colton* v. *Fox,* 67 id. 348 ; *Warner* v. *Durant,* 76 id. 136.) The gift to the wife and children is not merely future, but it is in a residue uncertain and unascertainable at the death of the testator. (*Colton* v. *Fox,* 67 N. Y. 352 ; *Curtis* v. *Lukin,* 5 Beav. 147 ; *Manice* v. *Manice,* 43 N. Y. 370.) The trust estates were to receive the rents and profits of land and apply them to the use of a person for life or for a shorter period, and therefore suspended the power of alienation during their existence. (1 R. S. 730, § 63 ; *Brewer* v. *Brewer,* 11 Hun, 147 ; 72 N. Y. 603 ; *Hobson* v. *Hale,* 95 id. 609.) The authority of the executors under the power of sale in the will has terminated. (1 R. S. 736, § 121 ; 4 Kent's Com. 333 ; *Hetzel* v. *Barber,* 69 N. Y. 12 ; *Richardson* v.

*Sharpe*, 29 Barb. 226 ; *Allen* v. *De Witt*, 3 N. Y. 276 ; *Russell* v. *Russell*, 36 id. 581 ; *Egerton's Admr.* v. *Conklin*, 25 Wend. 224 ; *Sharpstone* v. *Tillow*, 3 Cow. 651 ; *Jackson* v. *Jansen*, 6 Johns. 73.) The power of sale was not conferred upon and does not rest on the plaintiffs. (2 Wash. on Real Prop. 662 ; 1 R. S. 730, §§ 68, 71.)

*Samuel Hand* for respondents. The fact that a time is fixed when the executors are to divide the property among those entitled to it, in whom it is vested, does not suspend or delay the vesting, whether that period is beyond the permitted period for which alienation of estates may be suspended or not. (*Manice* v. *Manice*, 43 N. Y. 303 ; *Muller* v. *Skippman*, 6 Abb. N. C. 343 ; *Burke* v. *Valentine*, 52 Barb. 412 ; *De Kay* v. *Irving*, 5 Denio, 649.) Assuming that the seventh clause created a trust estate in the executors to continue until the time of the division so as to prevent the vesting of the remainder before that period would be valid, the statutory limit of suspension would not be passed. (*James* v. *Beasely*, 14 Hun, 520 ; *Lang* v. *Ropke*, 5 Sandf. 363 ; *Eels* v. *Lynch*, 8 Bosw. 466 ; *Guggenheimer* v. *Sullivan*, 12 Weekly Dig. 541.) The testator meant by survivor the youngest of those who survived him. (*Dominick* v. *Moore*, 2 Bradf. 201 ; *Girdall* v. *McLean*, id. 306 ; *Schettler* v. *Schettler*, 41 N. Y. 328.) Where the property is divided into shares, and a trust created for the lives of the testator's children, that of each child is held to continue only during her life. (*Everett* v. *Everett*, 29 N. Y. 39 ; *In re Verplanck's Will*, 91 id. 439.)

ANDREWS, J. By the will of James Benedict, his executors and trustees were authorized to sell his real estate if they should deem it expedient for the purpose of making the division directed in the will, or for carrying into effect all or any other of the purposes and trusts therein specified. The testator died in 1840, seized of the real estate embraced in the contract of sale, the validity of which, and of the title tendered thereunder, is the matter in controversy. The

contract dated August 4, 1883, is between Theodore H. Benedict, as sole surviving executor of James Benedict, and the defendant, Webb, for the sale to the latter of premises in the county of Westchester. It is conceded that the validity of the title tendered to the defendant pursuant to the contract depends upon the question whether the power of sale contained in the will was a valid authority and justified the executor in making the contract. This in turn depends upon the validity of the trust term created by the will in the executors. If the trust is valid, we think there is no substantial objection to the title tendered. If, however, it is invalid, we are of opinion that the power of sale for the purpose of a division, as provided in the will, falls with it, and cannot be executed as a separable and independent provision.

The testator left surviving him a widow, who died in 1875, and four children — two sons and two daughters. Two of the children, Theodore H. Benedict and Mary Matilda Benedict, were minors at the death of the testator. The younger, Mary Matilda Benedict, became of age June 17, 1845. The validity of the trust depends upon the point whether it was lawfully constituted in respect of duration. The testator, after making some trifling legacies, gives the whole residue of his estate, consisting of real and personal property, to his executors in trust. By the seventh clause he directs that the net income of his estate be divided and paid to his wife and four children, and to their issue in case of their death, in certain proportions, " until all my said children, or the youngest survivor of them, shall have attained the age of twenty-one years." By the eighth clause he directs that at the period mentioned in the seventh clause, all his estate then remaining shall be divided and distributed by setting apart one equal third part for the use of his wife, and paying her the net rents, profits and income thereof during her natural life; the remaining two equal third parts thereof to be equally divided to and amongst all his children. The shares of the sons to be conveyed and delivered to them or their heirs. The shares of the daughters are continued in trust during the lives of the daughters respect-

ively, the income to be paid to them during life, and on the death of either, the body of the share of the one so dying is given to her issue, or in case of her dying without leaving lawful issue, then to such person or persons as she may appoint by will, and in default of appointment, to her then right heirs.   Upon the death of his wife, the third part of the estate set apart for her use during life is directed to be divided and distributed to and amongst all his children in the manner directed as to the two third parts of the residuary estate.

It thus appears that the scheme of the testator in the disposition of his residuary estate was to keep it together in the hands of his trustees until the period appointed for the division, and that it then should be divided, and one-third part thereof set apart for the use of his wife for life, and one equal share of the remaining two-thirds should vest absolutely in possession in each of his two sons, the shares of the daughters to remain in trust during their respective lives, remainder to their issue, or appointees, or right heirs, as the case might be, and that the share set apart for the use of the wife should, on her death, be divided among his four children as stated.

The first inquiry relates to the construction of the words used by the testator to designate the period of division, viz. : " When all my said children, or the youngest survivor of them, shall have attained the age of twenty-one years." It is claimed on behalf of the respondents that this clause provides for two separate and independent events, the happening of either of which would determine the period of division, one, when all the testator's children should reach their majority, and the other, when the youngest child of the testator surviving at his death, should attain majority, alternatives manifestly quite inconsistent with each other.   The materiality of this contention arises out of the fact that if the clause is construed as providing for a division when the youngest child of the testator surviving him should attain the age of twenty-one years, the suspension of alienation up to the time of the division, would be for a single life only, or for one minority, which, for the purposes of the statute, is equivalent to a life.   If, however, the true con-

struction is that the division was to take place only after all the minor children surviving the testator should reach their majority, then the suspension to that time would be for two minorities or two lives, as there were two minor children who survived the testator. The construction of the respondents would make the trust valid, since counting the minority of the youngest child surviving the testator as one life, the further suspension of the daughter's shares is during the life of each daughter only, which would constitute a second life, and the entire period of suspension as to the share of each daughter would in this view be for only two lives, the period permitted by the statute. But we are of opinion that this construction cannot be sustained without violating the plain sense of the clause, and depriving the first part of any meaning. The plain intention of the testator was to postpone a division until all his minor children living at his death should attain their majority, and the alternative phrase, "or the youngest survivor of them," was doubtless inserted for greater caution, as it might happen that some of the testator's children being minors at his death, might die during their minority, and therefore never reach the age of twenty-one years, and the clause has the same meaning as if it had expressly provided that the division should be made when all of the testator's minor children living to attain the age of twenty-one years, should attain that age.

For the purpose of determining the validity of the trust term, we start, therefore, with the premise that the period appointed for the division was postponed for two minorities. The shares of the two sons were then to vest absolutely in possession, and as to these shares the trust was lawfully limited. The same is true, we think, as to the share of the youngest daughter, one of the two persons on whose minority the time for the division was limited. It is true there was a further suspension of her share, during her life. But the period of her minority and the added period of her life beyond her minority constituted in the whole but a single life. A suspension during the minority of a designated individual and a further suspension during the life of the same person does not in

legal effect differ from a single suspension in the first instance during the life of that person. Considering the suspension of the share of the youngest daughter, Mary Matilda, alone, it would seem, therefore, there was no unlawful suspension, for the suspension was only during the life of the other minor child, and her own life in addition.

But as to the share of the daughter, Anna Augusta, who was of full age at the death of the testator, it seems impossible to sustain the limitation. It was suspended during the minorities of her brother Theodore H. and her sister Mary Matilda, the two minor children of the testator living at his death. This is, within the statute, a suspension for two lives, because a suspension during a minority may be a suspension during a life. (*Hawley* v. *James* 16 Wend. 71.) If the trust as to her share was to terminate with the minorities, there would as in the case of the other shares be no difficulty. But it was to be continued after that period, in case she survived, during her life, making a third life, which the statute does not permit. We are of opinion, therefore, that the trust term as to this share, transgressed the limitation of the statute and is void. The consequence is that as to her share it was not legally disposed of by the will, and as to that part of the testator's estate he died intestate, because such is held to be the consequence when a trust limitation is void and there is no valid gift over on that contingency: (*Post* v. *Hover*, 33 N. Y. 593.) We should feel disposed to sustain the trusts in favor of the other children, except for the reason that to uphold those, while setting aside the trust in favor of Anna Augusta, would seriously interfere with the intention of the testator, that all the children and their issue should share equally in his estate, and would produce great injustice. The result of sustaining the trusts in favor of the other children would be that each would take one-fourth share of the estate, and also as heirs and distributees an equal share with Anna Augusta in the share intended for her. No case, we think, can be found which would justify upholding a part of a will, when by so doing it would produce such manifest injustice. (*Savage* v. *Burnham*,

17 N. Y. 562; *Knox* v. *Jones*, 47 id. 390.) We are of opinion, therefore, that the trust attempted to be created by the testator in the two-third parts of his estate cannot be sustained, and that as to such two-third parts he must be deemed to have died intestate. It is unnecessary to consider whether the share set apart to the widow and the trust for her benefit was lawful, and if valid, whether it could be sustained independently of the other trusts of the will. The death of the widow has rendered that question of no importance, and however it might be decided, its decision would not affect the result in this case. We have before stated that in our judgment the power of sale was dependent upon the trust as to the two-thirds of the testator's estate, and shares the same fate. Assuming that, there were purposes for which it might at some time have been exercised, other than for the purpose, or in aid, of a division by the trustees, yet presumably after such a lapse of time no such purposes remain. Moreover it is stated among the facts agreed upon, that the sale in this case, although not made in view of an immediate division of the estate, was with a view to aid in and further the ultimate division and distribution.

We think the objection made to the title was valid and that the judgment should therefore be reversed, with costs.

RAPALLO, MILLER and DANFORTH, JJ., concur; RUGER, Ch. J., EARL and FINCH, JJ., dissent.

Judgment reversed.