Samuel J. Silverman, S.
These are applications under SOPA 2302 (subd. 6) for attorneys’ fees, following the determination of this court and the Appellate Division (29 A D 2d 630) with respect to certain problems arising under the will.
The proceeding was brought by Lehigh University to compel payment to itself of a legacy under article Fourteenth of the decedent’s will and to free Lehigh from certain limitations imposed thereby.
There were three main issues in the case:
1. Whether Lehigh had forfeited the legacy by its failure to comply literally with the terms of the legacy in connection with the construction of a wing of a building to be named in honor of decedent’s husband, or whether the court should allow a deviation from some of the terms of the bequest in order to enable Lehigh to meet what was claimed to be the substantial wish of decedent.
2. Whether Lehigh or the residuary legatees were entitled to a stock dividend on American Telephone and Telegraph stock *555 declared between the date of the will and the date of decedent’s death.
3. Whether Lehigh or the residuary legatees were entitled to certain post mortem dividends on stock included in the bequest in article Fourteenth.
All these issues were decided in favor of Lehigh.
The contesting parties were Lehigh University on the one hand, and the three residuary legatees who are entitled to the residuary on the other. All of the contestants are charities.
Now, the attorneys for all the parties ask for attorneys’ fees and disbursements for their services in connection with the proceeding. Lehigh’s attorneys ask that their fees be paid out of the residuary rather than out of the specific bequest to Lehigh under article Fourteenth. The residuary legatees’ attorneys contend that so much of the attorneys’ fees as relate to issue “ 1 ” should be borne by each party itself, and that so much of the attorneys’ fees as relate to issues “ 2 ” and “ 3 ” should be allocated between the specific legacy to Lehigh and the residuary.
Assuming that this proceeding may be deemed a construction proceeding within the rationale of Matter of Liberman (6 N Y 2d 525, 531 [1959]), so that the Surrogate has discretion to award attorneys’ fees, there still remains the question of how the Surrogate shall exercise that discretion.
It is sometimes said that in a construction proceeding allowances may be charged to the general estate rather than the share or interest affected for the reason that a construction proceeding clarifying the meaning of the will is deemed beneficial to the entire estate. (Cf. Matter of Griffing, 31 Misc 2d 266, 267 [Surr. Ct., Suffolk County].) But whether we say that the “ estate ” shall pay or that the particular “ share or interest affected ” shall pay, it remains true that every dollar paid to one person is a dollar that someone else cannot have. Somebody must ultimately bear the expense and the question is who that shall be.
In the present case I think each party should bear its own attorneys’ fees entirely and I so direct.
In litigations in American courts, each party normally expects to, and is required to bear, his own attorneys’ fees. I can see no reason for a different rule here.
My chief reason for my view in this case is that no attorney here was arguing or working for anybody but his own client and success would enure only to the benefit of the attorney’s own client. A specific fund was to be disposed of here and the *556 dispute was simply as to who should get it. Lehigh said it should get it. The residuary legatees said they should. Nohody suggested that some unrepresented party should get it in whole or in part. Nobody was representing a class.
It seems to me that, in general, in a construction proceeding as in any other proceeding, parties must expect to bear their own attorneys’ fees where, as here, (a) each attorney represents only his own client who is not acting in a representative capacity and who is not a “ person under disability” (SCPA 103, .subd. 37), (b) the dispute is as to the disposition of an immediately available fund; (c) success will enure to the immediate benefit of the attorney’s own client only, and (d) there is no question of future interests involved (i.e. it is not the case of a successful client having to wait a generation or so and the happening of some contingency before he can really benefit). I have previously expressed my view on this in Matter of Stern (N. Y. L. J., Aug. 22, 1967, p. 10, col. 1).
This view seems quite applicable to the facts of the present case.
Lehigh University was victorious in its contention. It is hard ,to see why Lehigh should be expected to pay out of its legacy for the attorneys’ fees incurred by other parties in seek- _ ing unsuccessfully to take that legacy away from Lehigh. As stated by the Appellate Division in Matter of Ablett (2 A D 2d 205, 212) in language which the Court of Appeals quoted with approval (3 N Y 2d 261, 279): “ the appellant charities sought to benefit by a construction that the share of respondent had lapsed, contending vigorously for the entire residuary estate, and it seems inequitable to burden the share of the victorious party with the payment of fees for the losers’ attorneys. He who stands to gain should also stand to lose.”
On the other hand, most of the problem arose by reason of Lehigh’s inability to comply with all the details of the bequest, and the application was brought essentially to allow a deviation from the terms of the will for Lehigh’s benefit. It therefore seems a little rough to require the residuary legatees to bear Lehigh’s attorneys’ fees in this endeavor, particularly as the objection of the residuary legatees was not simply captious.
With respect to issues “ 2 ” and “ 3 ” above (the premortem stock dividend and the postmortem dividends) no deviation was required. It was simply a question of construction and application of the will as written. But even there each party was seeking its own benefit.
Finally, the court notes that each of the parties was quite generously provided for under the will. Thus the specific legacy *557 to Lehigh is said to be worth between $650,000 and $700,000, of which approximately $150,000 represented the disputed stock dividend and postmortem dividends. The residuary, on the other hand, which is to be divided among the three residuary legatees, is said to be worth approximately $1,500,000. Each residuary legatee wanted to increase its own share somewhat. Each party can and should bear its own attorneys’ fees in attempting to so increase its share.
Having decided that each party shall bear its own attorneys’ fees, the question arises whether I should now determine these fees. I have decided not to do so because this now becomes a question between each attorney and his own client, and it is not clear to me from the record either (a) .that the client has consented to the amount of the attorney’s fee to be paid out of the client’s share or (b) that the client has had any notice that an application, is being made to pay its attorney any specific amount out of the client’s share.
Accordingly, all applications are denied without prejudice to any procedurally appropriate application that the attorneys may make on notice to their clients for payment out of the client’s share.